## Case No. 10,011.

### The NAPOLEON.

[7 Biss. 393; 4 N. Y. Wkly. Dig. 422; 9 Chi. Leg. News, 280.] [1]

District Court, E. D. Wisconsin. April, 1877.

MARITIME LIEN—WAIVER—TAKING NOTE—TRANSFER OF NOTE—PURCHASER WITH KNOWLEDGE—TRIAL—SURRENDER OF NOTE.

1. In the absence of express contract of waiver, or of an agreement that a note shall be taken

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 4 N. Y. Wkly. Dig. 422, contains only a partial report.]

in actual payment, a maritime lien is not waived or extinguished by giving credit for a limited time, nor by the acceptance of a note for the amount due on account of the service which is the foundation of the lien.

[Cited in The Illinois, Case No. 7,005.]

2. In the case of a note taken it is necessary that it should be surrendered at the hearing.

3. Although a maritime lien is strictly personal and is not assignable, yet if a note taken without waiver of the lien is discounted by a bank upon the indorsement of the person having the lien, and the indorser afterwards takes up the note, he still can enforce his lien, as such a transfer of the note does not extinguish it.

[Cited in The Emma L. Coyne, Case No. 4,466.]

4. The above principles apply where the vessel had been purchased by persons knowing of the existence of the lien.

5. Many cases cited and commented upon.

In admiralty. In 1873, Tyson, Sweet & Co. were the owners of the schooner Napoleon. The libelants composed a firm known as the Milwaukee Tug Boat Line, and were the owners of tugs engaged in towage service at the port of Milwaukee. Between the 13th of July, 1873, and the 19th of December of the same year, libelants' tugs rendered towage service for the Napoleon to the amount of $359. In February, 1874, the claimant purchased the vessel from Tyson, Sweet & Co., and received a conveyance. On the 12th day of May, 1874, the libelants took from Tyson, Sweet & Co. their note for the amount due for such towage service, payable in thirty days, which note included the amount due for a similar service rendered for the schooner Jason Parker, which vessel had been at the time of such service owned by Tyson, Sweet & Co., and was sold and conveyed to claimant at the same time that he received a conveyance of the Napoleon. Prior to the maturity of the note, the libelants presented it to the Second Ward Savings Bank, with their indorsement thereon, for discount. The note was discounted by the bank.

When the note fell due, it was presented to the makers for payment, was not paid, was protested for non-payment and notice given to the indorsers, the libelants. Libelants thereupon paid to the bank the amount due upon the note, and it came back to their hands. They then filed a libel against the vessel, thereby asserting a maritime lien for the towage service on account of which the note was originally given, and at the hearing surrendered the note.

H. H. Markham, for libelants.

N. J. Emmons, for claimant.

DYER, District Judge. For the towage service rendered by the libelants, they had a lien upon the vessel. Upon the testimony I must find that the claimant purchased with knowledge of libelants' claim. He therefore acquired and held title subject to the lien.

Subsequent to the conveyance of the vessel, the libelants took from the former owners, their note for the amount due on account of the towage service. The lien existed and was in full force at the time the note was taken notwithstanding the previous purchase of the vessel by the claimant. The first question presented, is, did the acceptance of this note operate as a waiver of libelants' lien. The discussion of this question is unnecessary, since it is settled upon authority that in the absence of express contract of waiver, or of agreement that a note shall be taken in actual payment, a maritime lien is not waived or extinguished by giving credit for a limited time, nor by the acceptance of a note for the amount due on account of the service which is the foundation of the lien. The Nestor [Case No. 10,126]; The Chusan [Id. 2,717]; The Active [Id. 34]; The Eclipse [Id. 4,268], and cases there cited; The Gate City [Id. 5,267]; Harris v. The Kensington [Id. 6,122]; The Kimball, 3 Wall. [70 U. S.] 37; The Emily Souder, 17 Wall. [84 U. S.] 666; Raymond v. The Ellen Stewart [Case No. 11,594]. In the case of a note taken, it seems essential to the maintenance of a libel in rem, that the note be surrendered at the hearing.

Ramsay v. Allegre, 12 Wheat. [25 U. S.] 611, is not in antagonism to the cases cited, and is to be distinguished from them. In that case the material man had received a negotiable note for the amount of his demand. The note was still outstanding when the libel was filed. It had not been surrendered, and it did not appear that it had not been negotiated and that it was not then in the hands of a third party. These being the circumstances, the supreme court held that the libel could not be maintained, resting the decision upon the fact that the note had not been given up or tendered at the hearing.

In the case at bar, the proofs tend to show, not only that it was not agreed, when the note was taken by libelants, that it should be received in absolute payment of their claim, but that it was understood that libelants' lien should be unaffected, and that if the note should not be paid, recourse would be had against the vessel.

The remaining and principal question in the case is this: Did the subsequent negotiation and transfer of the note by libelants to the bank, extinguish the lien? Libelants placed their indorsement on the note and presented it to the bank for discount. The bank discounted it on the strength of the indorsement, held the note till due, then presented it to Tyson, Sweet & Co. the makers, for payment, and upon its non-payment, protested it and gave notice to the indorsers, who paid the bank and took up the note. Was the lien, by this transaction extinguished? Or, upon the note coming back into the hands of the payees unpaid by the makers, could they, on surrender of the note, maintain proceedings against the vessel?

Whatever doubt once existed as to the assignability of a general maritime lien, the question has been put at rest by repeated adjudications. The lien of a salvor on account of salvage service, of a mariner for wages, of a material man for repairs or supplies, is strictly personal and does not pass to his assignee. The same must be said of a lien for towage. It is equally well settled that an assignment or transfer of the claim which constitutes the basis of the lien, extinguishes the lien.

The question whether the assignment by a mariner of his claim to unpaid wages, confers upon the assignee a right to maintain a suit in rem for the recovery of such wages, was fully discussed in the case of Patchin v. The A. D. Patchin [Case No. 10,794], and was answered in the negative. A distinction was taken between a claim of this character, and bottomry bonds, which are assignable because they are express hypothecations and bind the ship to the lender and his assigns, and bills of lading which are made negotiable for the benefit of trade and commerce. The rule that an assignment of a claim to secure which the maritime law gives a lien, divests the lien which originally existed in favor of the holder of the claim and confers no right in the assignee to claim reimbursement in a court of admiralty, was also laid down in the following cases: Sturtevant v. The George Nicholaus [Id. 13,578]; Logan v. The Aeolian [Id. 8,465]; Rusk v. The Freestone [Id. 12,143]; Reppert v. Robinson [Id. 11,703]; Harris v. The Kensington [supra]; The Champion [Case No. 2,583].

In the case at bar, as we have seen, the claimant purchased the vessel with notice of libelants' claim and lien. He therefore stands in no better position to contest the libelants' rights to a lien, than would Tyson, Sweet & Co. if they were yet the owners of the vessel. The case is not therefore one where the rights of innocent purchasers, without actual notice, are involved. Now, admitting the principle of law before stated, that the assignment or transfer by the original holder of a claim against a vessel extinguishes the lien, did libelants, by procuring the note which they had received from Tyson, Sweet & Co. to be discounted by the bank, in fact or effect transfer their claim against the vessel to the bank? If the transaction was such transfer or assignment, then it must be conceded the lien was divested and lost. But I am of the opinion that it was not. The execution of the note, as we have seen, was not a payment of libelants' demand against the vessel. Its acceptance was not a waiver of the lien. The original claim remained unimpaired, and would only be discharged on payment of the note. Pertinent to this point, is the language of Judge Sprague in Page v. Hubbard [Case No. 10,663]: "The creditor has received nothing except another promise of the debtor to pay the debt. This second promise is indeed in writing and negotiable, but it is a promise to pay the same debt. It acknowledges value received, but the only value received was the materials which went in the ship. The debt, therefore, cannot properly be said to be satisfied, merely because there had been two promises by the debtor to pay it, the one by parol, and the other in writing negotiable." It is true that while the note was outstanding the libelants could not pursue their remedy in rem, and this is for the reason, as the courts express it, that the debtor would still be responsible to the holder of the note, and he ought not to be twice liable in any form, on account of the same debt. And that he may not be subjected to this hazard the courts require "the production of the note to be cancelled when the judgment is rendered on the original promise." Though the remedy on the original claim was suspended while the note was outstanding, it does not necessarily follow that the discounting of the note by the bank operated as a transfer or assignment of the original debt or demand. The transaction between libelants and the bank, amounted to an advance of money on the note by the bank on the strength of libelants' indorsement. It was not an indorsement without recourse, but was in form such that upon notice of its non-payment by the makers, the libelants would become obligated to take up the note. Upon maturity and non-payment, the note came back into their hands, and I think that upon its surrender they were remitted to the privilege they would have had if the note had remained in their continuous possession until due, namely, the privilege to proceed in rem against the vessel. The transfer of the note to the bank was accompanied with libelants' contingent liability to take it up when due, which liability became absolute on non-payment by the makers and notice. The question I admit is not free from difficulty; but in view of the special circumstances of the case, the claimant having no better right to contest libelants' asserted lien, than would be possessed by Tyson, Sweet & Co. were they still the owners of the vessel, and the note having been discounted upon libelants' indorsement, and having come immediately back to their hands when due, I think it most consonant with correct reasoning to hold, that there was not such an assignment of libelants' claim against the vessel, or her owners, as extinguished the lien. In this view I am supported by Judge Betts, who, in the case of The Active [supra], held, that the taking of a promissory note was not a waiver of a lien on a vessel for supplies, as against a claimant who did not innocently and without notice acquire rights or interests in the vessel, and that while the note remained in circulation or outstanding, it operated as a suspension of the remedy on the lien; but on its surrender by the original creditor he was re-

mitted to his original privilege and could proceed in rem against the vessel.

A different view was taken by Judge Magrath in the case of Harris v. The Kensington [supra]. He admits that where a lien arises under the maritime law it is not waived or lost because a note or bill has been taken for it by the creditor, and that the acceptance of the note is not to be held a payment of the original demand unless so agreed. This conceded, it is then held that a transfer of the note transfers the original debt or claim and thereby extinguishes the lien, which cannot be revived by taking back the note. I am unwilling to adopt unreservedly this course of reasoning.

It may be observed that the precise point under consideration was not necessarily before the court for decision in either of the two cases last cited, as it did not appear in either case that the note taken by the original creditor had ever been transferred.

Admitting the full force of Judge Longyear's statement in the case of The Champion, supra, that the decisions of our own admiralty courts fully sustain the position that the lien which, for example, a material man has, "is strictly personal to himself, and does not pass to the assignee, that it is in fact extinguished by the assignment of his claim, so that neither he nor his assignee can come into a court of admiralty for its enforcement," I have been unable, after as diligent an examination as I could make, to find a case, where the principle was enforced, which did not upon the facts show an absolute assignment or transfer of the original debt or demand.

In Reppert v. Robinson [supra], the libelant had taken a due-bill for the amount of his claim, produced it at the trial and offered to surrender it. There was an assignment to a third party indorsed on the due-bill which bore date prior to the filing of the libel and which was erased. Judge Taney in his decision granting a decree, held that as the due-bill was produced by the libelant and offered to be surrendered and delivered up, he must be regarded as the lawful owner, and if it had been assigned, that it had again been returned to the libelant. It is evident that the right to a decree was here considered to rest upon the libelant's ownership of the due-bill when the libel was filed; and upon his offer to surrender it at the hearing; and that the fact that it might have been previously assigned was not deemed material as affecting the lien.

In the case at bar, I rest my conclusion upon the ground, that the transaction between the libelants and the bank, by which the note was discounted and again taken up, was not a transfer of the original debt or demand so as to bring the case within the principle of those authorities which hold that such transfer or assignment effects an extinguishment of the lien. Decree for libelants.